# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| MEINEKE CAR CARE CENTERS, LLC, | : |
|  | : |
| Plaintiff, | :    Civil No. 17-12408 (RBK/KMW) |
| v. | : |
|  | :    **OPINION** |
| JAMES JULIANO, SR., JNMVR ENTERPRISES, INC., NICHOLAS JULIANO, JAMES JULIANO, Jr., AND MY FAMILY CARE CARE LLC, | : |
|  | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter arises out of Meineke Car Care Centers, LLC's ("Meineke" or "Plaintiff") claims against James Juliano, Sr., Nicholas Juliano, James Juliano, Jr., JNMVR Enterprises, Inc., ("JNMVR") and My Family Car Care, LLC, ("MFCC") (collectively, "Defendants") for allegedly breaching a franchise agreement, among other things. (Doc. No. 1.) Defendants[1] asserted six Amended Counterclaims against Meineke. (Doc. No. 18 ("Countercl.").) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Meineke now moves to dismiss each counterclaim but the first. (Doc. No. 19.) Although Defendants had ample opportunity to oppose the motion, they did not do so. For the following reasons, Meineke's motion is **GRANTED** in part and **DENIED** in part.

---

[1] James Juliano, Sr. and JNMVR are collectively referred to as the "JNMVR Defendants." Nicholas Juliano, James Juliano, Jr., and My Family Car Care are collectively referred to as the "MFCC Defendants."

1

**I. BACKGROUND[2]**

In February 2011, Meineke entered into a Franchise Agreement (the "Agreement") with JNMVR. (Countercl. at ¶ 3.) The Agreement, guaranteed by Juliano, Sr., granted JNMVR the right to operate a franchise at 912 Haddonfield Road in Cherry Hill, New Jersey. (*Id.* at ¶¶ 3–4.) Among its many provisions, the Agreement prohibited Juliano, Sr. from operating the franchise elsewhere without Meineke's consent. (Agreement at § 2.1.) It also required Juliano, Sr. to obtain approval before relocating the franchise, (*e.g.*, *id.* at §§ 2.2, 2.6) and before selling or transferring it (*id.* at art. 12). And importantly, the Agreement contained a territorial protection clause. (*Id.* at § 2.3.) In that clause, Meineke promised, among other things, not to grant others the right to operate a franchise within a 3-mile radius of JNMVR without first giving the JNMVR Defendants a 30-day right of first refusal. (*Id.*) This same protection was also afforded to another franchisee in Cinnaminson (the "Cinnaminson franchisees") in their franchise agreement.[3] (*See* Pl. Br., Ex. A.)

Around August 2013, JNMVR learned that its landlord intended to sell its property by 2016 and terminate JNMVR's lease early. (Countercl. at ¶¶ 5–7.) Thereafter, the landlord made an offer to buy the franchise, but Meineke's representative, Mr. Fillman, notified Juliano, Sr. that the landlord was not approved as a franchisee. (*Id.* at ¶¶ 9–10.) Although for the next two years,

---

[2] On this motion to dismiss, the Court accepts as true the facts as pled in the counterclaims and construes them in the light most favorable the Defendants. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

[3] "While courts typically cannot consider matters outside of the pleadings when deciding a motion to dismiss, there is an exception to this general rule when a document is integral to, or explicitly relied upon in, the complaint." *Allen v. New Jersey State Police*, No. 16-cv-1660, 2017 WL 5714707, at *2 n.2 (D.N.J. Nov. 28, 2017). Because the counterclaims expressly refer to the Cinnaminson franchisees' right of first refusal (*see*, *e.g.*, Agreement ¶¶ 34–35, 38) the Court considers their franchise agreement in deciding this motion. *See Allen*, 2017 WL 5714707, at *2 n.2. The same goes for JNMVR's own Agreement. (Agreement at ¶¶ 3–4, 49, 67, 72.)

the landlord maintained interest in buying the franchise, (*id.* at ¶ 11), this relationship eventually soured; both parties sued each other over the property's proposed sale, and they reached a settlement requiring JNMVR to leave 912 Haddonfield Road by August 1, 2017. (*Id.* at ¶¶ 18–20.) The relocation process thus began.

First, Juliano, Sr. found a potential purchaser and a new location on Route 70 in Cherry Hill, New Jersey, that Meineke approved, but the lease and purchase both fell through. (*Id.* at ¶¶ 13–17, 22.) In May 2017, "Plaintiff insisted on payment of all unpaid royalty and advertising fees before they would approve relocation of JNMVR's franchise location." (*Id.* at ¶ 23.) JNMVR paid these fees (*id.*), and Juliano, Sr. found a second relocation option at 326 Haddonfield Road in Cherry Hill. (*Id.* at ¶ 24.) Meineke approved that property soon after, (*id.* at ¶ 25), but the lease again fell through. (*Id.* at ¶ 26.) At this point, Juliano, Sr. "requested help from the Plaintiff to find a new location," but "never received a response." (*Id.* at ¶ 27.) Juliano, Sr. would continue requesting Meineke's help, but Meineke "never substantively responded to" Juliano, Sr.'s "multiple emails." (*Id.* at ¶ 58.)

On July 10, 2017, Juliano, Sr. found a third option at 54 Haddonfield Road in Cherry Hill. (*Id.* at ¶ 28.) With JNMVR's August 1, 2017 move-out deadline approaching, (*id.* at ¶ 20), Juliano, Sr., notified Mr. Fillman that if this relocation failed, JNMVR would close. (*Id.* at ¶ 29.) Accordingly, Juliano, Sr. requested expedited approval from Mr. Fillman and began lease negotiations. (*Id.* at ¶¶ 29–30.) A month later, Mr. Fillman responded to Juliano, Sr. and requested that Juliano, Sr. provide more information about the proposed relocation site. (*Id.* at ¶ 33.) "On August 14, 2017, more than six (6) weeks after it was first proposed, JNMVR was notified by the Plaintiff that the proposed location at 54 Haddonfield Road was .2 of a mile within another Meineke franchisees' territory in Cinnaminson, New Jersey, even though it was

3

only 800 yards from the approved location at 326 Haddonfield Rd. and 1.2 miles from the original location at 912 Haddonfield Road." (*Id.* at ¶ 34.)[4] This triggered the Cinnaminson franchisees' rights under their territorial protection clause. (*Id.* at ¶ 35.)

Accordingly, Mr. Fillman informed Juliano, Sr. that "before Plaintiff could approve the relocation, [the Cinnaminson franchisees] would be entitled to a right of first refusal" under their franchise agreement, which permitted them "to purchase a new franchise license and negotiate a lease with the landlord at the proposed location, within 30 days." (*Id.*) On August 18, 2017, Juliano, Sr. asked Meineke to initiate "the supposed 30-day right of first refusal processes" with the Cinnaminson franchisees for 54 Haddonfield Road. (*Id.* at ¶ 38.)

That same day, the landlord at 54 Haddonfield Road gave JNMVR permission to move belongings into the premises without a lease, which they would finalize after Meineke's approval. (*Id.* at ¶ 39.) While moving in, Juliano, Sr. "requested that Plaintiff update their web site to reflect the new location, until the territorial issue with the Cinnaminson franchisees was resolved," but "Plaintiff responded that they could not update the website as requested, at that time." (*Id.* at ¶ 41.) Around September 5, 2017, after the move was complete, Juliano, Sr. "was informed verbally, that the right of first refusal details that were given to him by Mr. Fillman, were incorrect, and that the owners of the Cinnaminson franchise did not have to negotiate a lease at 54 Haddonfield Road, but instead had a year to find another location within that territory." (*Id.* at ¶ 42.)

Two days later, Juliano, Sr. received an email "from the Plaintiff, that they had not approved the relocation to 54 Haddonfield Road, and that JNMVR should close the Center, until the right of first refusal process was completed." (*Id.* at ¶ 43.) On September 11, 2017, Juliano,

---

[4] These are the distances alleged in the counterclaims. (*Id.*) The Court takes them as true on this motion to dismiss and expresses no opinion as to their accuracy.

4

Sr. contacted Meineke's general counsel to clarify the right of first refusal details and learned that he "was correct in his original interpretation of the process, but the circumstances in JNMVR's situation were somehow different." (*Id.* at ¶ 44.) All the while, from August 15, 2017 to September 12, 2017, Juliano, Sr. continued negotiating—unsuccessfully—with the Cinnaminson franchisees so JNMVR could relocate to 54 Haddonfield Road. (*Id.* at ¶ 45.) Juliano, Sr. "repeatedly requested help from the Plaintiff's representatives to mediate these negotiations as they promised to do," but "Plaintiff never complied with those promises." (*Id.* at ¶ 45.) Ultimately, JNMVR rescinded its relocation request and shut down at 54 Haddonfield Road. (*Id.* at ¶¶ 48–49.) Juliano, Sr. also advised Meineke's representatives that JNMVR was selling its assets to another entity, My Family Car Care, which would run an independent car care business at 54 Haddonfield Road. (*Id.* at ¶¶ 49–51.) My Family Car Care was formed by James Juliano, Jr. and Nicholas Juliano, who signed a lease at 54 Haddonfield Road on September 18, 2017. (*Id.* at ¶¶ 50–51.)

On September 28, 2017, Juliano, Sr. attended Meineke's regional sales meeting, when he spoke with Meineke's President, Mr. Daniel Rivera. (*Id.* at ¶ 55.) "Mr. Rivera asked Mr. Juliano, Sr. if he would accept the Plaintiff as a mediator" in the Cinnaminson franchisee dispute. (*Id.* at ¶ 56.) "Mr. Rivera promised that he would reach out to [them]," but "to date, Mr. Rivera has never followed through with this promise." (*Id.* at ¶ 57.) On November 7, 2017, Juliano, Sr. proposed one final relocation site to Mr. Fillman, who responded about two weeks later asking for more information. (*Id.* at ¶ 60–61.) Thereafter, Mr. Fillman advised Juliano, Sr. that Meineke would not approve the proposed site or any other, and around December 4, 2017, Meineke filed the Complaint in this matter. (*Id.* at ¶¶ 63–65.)

Meineke's suit alleges that when Defendants began operating MFCC, which it calls a "copy-cat, knock off business offering the same types of goods and services" as Meineke, they breached their franchise agreement and infringed Meineke's trademarks. (Pl. Br. at 1.) The Defendants filed an Amended Answer and Counterclaims, asserting six counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, tortious interference with contract/prospective contractual relations, and unfair competition. (Doc. No. 18.) Meineke now moves to dismiss each counterclaim but the first. Defendants have not opposed the motion, but the Court must still analyze whether they have stated claims on the merits. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

## II. LEGAL STANDARD

"A motion to dismiss a counterclaim is properly evaluated under the familiar Rule 12(b)(6) standard." *Signature Bank v. Check-X-Change, LLC*, No. 12-2802, 2013 WL 3286154, at *2 (D.N.J. June 27, 2013). Under that standard, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the

elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

The Agreement contains a choice-of-law provision that states: "all issues arising from or relating to this Agreement will be governed by and construed under" North Carolina law. (Agreement at § 17.1.) Given the clause's broad language, New Jersey's preference for enforcing private choice-of-law clauses, *see Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001), and Defendants' failure to argue that another jurisdiction's law applies, the Court, on this record, will apply North Carolina law in assessing Defendants' counterclaims. *See Intervet, Inc. v. Mileutis, Ltd.*, No. 15-cv-1371, 2016 WL 740267, at *3 (D.N.J. Feb. 24, 2016) (applying contractually chosen law to all counterclaims, including tort claims, when there was no dispute over a nearly identical choice-of-law clause). As set forth below, Counts II, III, V, and VI are dismissed; Meineke's motion to dismiss Count IV is denied.

### A. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

The JNMVR Defendants allege that Meineke breached various covenants of good faith and fair dealing implied in the Agreement. (Countercl. at ¶ 72.) Meineke argues that this claim

7

should be dismissed because the duties alleged are either contrary to the Agreement's express terms or do not exist in the Agreement. (Pl. Br. at 11.) The Court agrees that this claim must be dismissed, but for a different reason. *See Hanson Eng'g, Inc. v. Ascher*, No. 07-2651, 2008 WL 1782392, at *2 (D.N.J. Apr. 18, 2008). The JNMVR Defendants' implied covenant claim is identical to their breach of contract claim (Count I), which Meineke has not moved to dismiss. (Countercl. at ¶¶ 67, 72.) "[A] claim for breach of the covenant of good faith and fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately." *BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, No. 12-cv-1129, 2014 WL 2968139, at *5 (M.D.N.C. July 1, 2014); *see also Pres. Prof'l Servs., LLC v. M2 Pictures, LLC*, No. 14-cv-589, 2015 WL 3659506, at *6 (W.D.N.C. May 5, 2015) (dismissing implied covenant claim "based on facts identical to those alleged to support the claims for breach of contract" because claims "should not be pursued separately"). Count II is dismissed, without prejudice.

### B. Fraudulent Misrepresentation (Count III)

The JNMVR Defendants allege Meineke made several fraudulent misrepresentations to Juliano, Sr. and JNMVR. (Countercl. at ¶ 76.) Meineke argues that the economic loss rule bars this claim, (Pl. Br. at 14–17), and that the JNMVR Defendants failed to plausibly allege fraud. (*Id.* at 11–14). For the second reason, Count III is dismissed, without prejudice.

#### i. Economic Loss Rule

The economic loss rule prevents a party from recovering purely economic losses in tort for conduct that amounts to a mere breach of contract. *See Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 257 (N.C. Ct. App. 2016). Meineke argues that under North Carolina law, this rule bars fraud claims. (Pl. Br. at 17.) But not all courts agree. In *Bradley Woodcraft*, the North Carolina Court of Appeals held that "while claims for negligence are barred by the economic

loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, '[t]he law is, in fact, to the contrary: a plaintiff may assert both claims[.]'" 795 S.E.2d at 259 (citation omitted). Following *Bradley Woodcraft*, several courts have not barred fraud claims under the rule. *See*, *e.g.*, *Prassas Capital, LLC v. Blue Sphere Corp.*, No. 17-cv-131, 2018 WL 1567362, at *5 (W.D.N.C. Mar. 30, 2018); *Potts v. KEL, LLC*, No. 16-cv-2877, 2018 WL 1597644, at *4 (N.C. Super. Ct. Mar. 27, 2018) (citing cases).

Other courts have reached the opposite conclusion. *See*, *e.g.*, *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345–47 (4th Cir. 1998); *Forest2Market, Inc. v. Arcogent, Inc.*, No. 15-cv-9547, 2016 WL 56279, at *4–5 (N.C. Super. Ct. Jan. 5, 2016). And recently, the Fourth Circuit, applying North Carolina law, rejected an argument that after *Bradley Woodcraft*, North Carolina's economic loss rule bars only negligence claims, not intentional tort claims like fraud. *See Legacy Data Access, Inc. v. Cadrillion*, *LLC,* 889 F.3d 158, 166 (4th Cir. 2018) (stating that "a plaintiff may not circumvent the economic loss rule simply by claiming that a breach of contract claim also sounds in fraud"). Whatever the state of the law, the Court need not resolve it here. The JNMVR Defendants have not plausibly alleged any fraudulent misrepresentation.

### ii. The JNMVR Defendants Have Not Plausibly Alleged Fraud

To state a fraudulent misrepresentation claim, the JNMVR Defendants must plausibly allege: "(1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) that was made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Packrite, LLC v. Graphic Packaging Int'l, Inc.*, No. 17-cv-1019, 2018 WL 4112827, at *4 (M.D.N.C. Aug. 29, 2018). The allegations must also satisfy Federal Rule of Civil Procedure 9(b), which requires a party to "state with

9

particularity the circumstances constituting fraud or mistake." To meet this "stringent" standard, the party "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d. Cir. 2007); *see also U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (requiring allegations to contain "the who, what, when, where and how of the events at issue" (citation omitted)).

Here, the JNMVR Defendants allege that Meineke, through Mr. Fillman, Mr. Rivera, and others, "made numerous fraudulent misrepresentations to Mr. Juliano, Sr., and JNMVR regarding: the proposed purchases of the JNMVR franchise, the approval process for franchise relocation requests, the right of first refusal process for resolving alleged territorial disputes amongst franchisees, and the mediation of territorial disputes between JNMVR and the Cinnaminson franchisees." (Countercl. at ¶ 76.) These allegations fail to identify which specific representations are believed fraudulent, and this alone could warrant dismissal under Rule 9(b)'s stringent standards. *See Inventory Recovery Corp. v. Gabriel*, No. 11-cv-01604, 2012 WL 2990693, at *3 (D.N.J. July 20, 2012) (dismissing fraud claim when plaintiff alleged that defendants "made representations" "concerning" certain budgets but "never identifie[d] what '[t]his statement' was"); *accord Bon Aqua Int'l, Inc. v. Second Earth, Inc.*, No. 10-cv-169, 2013 WL 357469, at *12 (M.D.N.C. Jan. 29, 2013) (recommending dismissal where Plaintiffs did not "identify, with particularity, a specific misrepresentation or concealment of a material fact by a specific Defendant" but instead, provided a "general list of alleged wrongs").

In any event, the representations alleged that may conceivably fit within these general categories[5] suffer from at least two defects: either they fail to plausibly allege an intentionally false and deceptive statement (*e.g.*, Countercl. at ¶¶ 10, 14–15, 23, 26, 34–35, 41–44, 64), or they fail to fully identify the who, what, when, where, or how of the statement (*e.g.*, *id.* at ¶¶ 10, 23, 26, 34, 41–43).

Nor can the JNMVR Defendants' more specific allegations plausibly plead fraud. As pled, on September 28, 2017, Juliano, Sr. spoke with Daniel Rivera at a regional sales meeting, where Rivera asked if Juliano, Sr. "would accept the Plaintiff as a mediator" in the Cinnaminson franchisee dispute. (*Id.* at ¶¶ 55–56.) Rivera "promised that he would reach out" to the Cinnaminson franchisees, but "never followed through with this promise." (*Id.* at ¶ 57.) Without more, these and similar allegations (*see id.* at ¶¶ 45, 48) are merely unfulfilled promises. *Swift Beef Co. v. Alex Lee, Inc.*, No. 17-cv-176, 2018 WL 792071, at *4 (W.D.N.C. Feb. 8, 2018) ("Simply put, '[a]n unfulfilled promise is not actionable fraud . . . unless the promisor had no intention of carrying it out at the time of the promise, since this is a misrepresentation of a material fact.'" (citation omitted)). Count III is dismissed, without prejudice.

### C. Negligent Misrepresentation (Count IV)

Next, the JNMVR Defendants allege that Meineke made several negligent misrepresentations to Juliano, Sr. and JNMVR. (Countercl. at ¶ 80.) Meineke's lone argument is that the economic loss rule bars this claim. (Pl. Br. at 14–18.) The Court finds that Count IV narrowly escapes dismissal. "To pursue a tort claim and a breach of contract claim concerning the same conduct," the economic loss rule requires the claimant to "allege a duty owed him by

---

[5] The Court's review of the allegations that could conceivably support this claim aimed for over-inclusion. The Court expresses no opinion on whether the cited allegations should, in fact, be used in support of a well-pleaded claim.

the defendant separate and distinct from any duty owed under a contract." *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (citation omitted). A party has not alleged an independent duty if the tort "arise[s] in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 333 (4th Cir. 1994); *Mecklenburg Cty. v. Nortel Gov't Sols. Inc.*, No. 07-cv-00320, 2008 WL 906319, at *4–5 (W.D.N.C. Apr. 1, 2008) (dismissing negligent misrepresentation claim because "the County fails to allege distinct and identifiable facts outside of contract performance").

A party may, however, allege an independent duty if it alleges facts to plausibly suggest that the tort is not based on mere contract performance, but rather, arises from acts outside the contract's scope. *See Regions Bank v. Fairway Indep. Mortg. Corp.*, No. 09-cv-534, 2010 WL 455045, at *5 (W.D.N.C. Feb. 2, 2010) (denying motion to dismiss fraud claim because the "facts alleged f[e]ll outside the contract between the parties"); *Capital Factors, Inc. v. The Fryday Club, Inc.*, 209 F. Supp. 2d 583, 585 (W.D.N.C. 2002) (declining to dismiss negligent misrepresentation counterclaim because allegations were not "merely 'assertions that . . . [a party] failed to meet its alleged obligations'" under a contract, but rather, acts "outside the scope of the contract"). Nor does the rule bar claims based on non-existent contractual duties. *See Artistic S. Inc. v. Lund*, No. 12-cv-11789, 2015 WL 8476587, at *11 (N.C. Super. Ct. Dec. 9, 2015) (declining to bar claim under economic loss rule when "alleged contractual duties . . . did not exist"); *see also USConnect, LLC v. Sprout Retail, Inc.*, No. 17-cv-2554, 2017 WL 1450593, at *6 (N.C. Super. Ct. Apr. 21, 2017). Put differently, courts may "focus on the availability of a contractual remedy" *Kelly*, 671 F. Supp. 2d at 794, and "only allow[] tort causes of action if contract theory is insufficient to cover the facts." *Capital Factors, Inc.*, 209 F. Supp. 2d at 585.

Here, the JNMVR Defendants allege that Meineke, through Mr. Fillman, Mr. Rivera, and others made negligent misrepresentations concerning four topics: "the proposed purchases of the JNMVR franchise, the approval process for franchise relocation requests, the right of first refusal process for resolving alleged territorial disputes amongst franchisees, and the mediation of territorial disputes between JNMVR and the Cinnaminson franchisees." (Countercl. at ¶ 80.) The Court finds that the economic loss rule bars the first two categories of alleged misrepresentations. (Countercl. at ¶¶ 10, 14–15, 23, 26, 34–35, 41–44, 64.)[6] As Meineke argues, the Agreement contains provisions covering the JNMVR Defendants' rights to sell and relocate its franchise subject to Meineke's approval. (*E.g.*, Agreement at art. 12; *id.* at §§ 2.2, 2.6.) Accordingly, any duty attaching to the representations alleged arises from Meineke's performance of the applicable terms and is not independent of the Agreement.

The economic loss rule also bars the third category of alleged misrepresentation regarding the right of first refusal process for resolving territorial disputes amongst franchisees. As pled, Mr. Fillman informed Juliano, Sr. that because 54 Haddonfield Road was too close to the Cinnaminson franchise, Meineke owed the Cinnaminson franchisees a 30-day right of first refusal under their contract to negotiate a lease at that location; then, Juliano, Sr. was told that the Cinnaminson franchisees had a year to find another location in that territory; finally, Juliano, Sr. was told that the original information was correct, but that JNMVR's situation was different. (Countercl. at ¶¶ 34–35, 42, 44.) Although Meineke's franchise agreement afforded the JNMVR Defendants and the Cinnaminson franchisees the same territorial protection and first refusal clauses, this branch of Count IV does not appear to be based on Meineke's performance of that duty under the Agreement, but rather, its statements about the duties it owed to the Cinnaminson

---

[6] *See supra* n.5.

franchisees under *theirs*.[7] Viewed in the light most favorable to the JNMVR Defendants, this would suggest conduct outside Meineke's performance of the Agreement's territorial duties, meaning that the economic loss rule would not bar the claim. *See Strum*, 15 F.3d at 333; *Regions Bank*, 2010 WL 455045, at *5; *Capital Factors, Inc.*, 209 F. Supp. 2d at 585.

But even if these statements do not arise out of Meineke's performance of the Agreement's territorial duties, they do arise out of Meineke's performance of its right to approve JNMVR's relocation. (*E.g.*, Agreement at §§ 2.2, 2.6.) Indeed, the first refusal process—and Meineke's accompanying statements—occurred "before Plaintiff could approve [JNMVR's] relocation" to 54 Haddonfield Road. (Countercl. at ¶ 35.) Because Meineke was performing under the Agreement's approval clauses when these purported misrepresentations occurred, the JNMVR Defendants do not plausibly allege the independent duty required to avoid dismissal.

Nevertheless, the Court cannot find that the economic loss rule bars the final category of misrepresentation alleged regarding Meineke's promises to mediate the Cinnaminson dispute. Although the Agreement governs the parties' rights in the event of a territorial dispute (*see* Agreement at § 2.3), Meineke's own view is that it contains no clause that fairly embraces a duty to mediate or help settle those disputes. (Pl. Br. at 11.) Instead, the JNMVR defendants allege that Meineke's representatives made unfulfilled, extra-contractual promises over the course of several exchanges to mediate the Cinnaminson dispute. (Countercl. at ¶¶ 45, 56–57.) Viewed in the light most favorable to the JNMVR Defendants, the allegations suggest conduct that cannot be addressed by asking whether Meineke adequately fulfilled a seemingly non-existent

---

[7] Meineke appears to acknowledge as much, arguing that Defendants' counterclaims "seek redress for [Meineke's] insistence that it honor and comply with its obligations *to another franchisee* under the express terms of *that franchisee's franchise agreement*, rather than ignoring those rights and obligations and allowing Defendants to establish an otherwise prohibited, and otherwise non-approvable, new franchise location." (Pl. Br. at 1 (emphasis added).)

contractual obligation. *See Strum*, 15 F.3d at 333; *Artistic S. Inc. v. Lund*, 2015 WL 8476587, at *11. To the contrary, the allegations suggest conduct outside the Agreement's scope for which there is no contractual remedy. *See Regions Bank,* 2010 WL 455045, at *5; *Kelly*, 671 F. Supp. 2d at 794; *Capital Factors, Inc.*, 209 F. Supp. 2d at 585. At minimum, there is a question about the Agreement's applicability to these alleged statements that defeats Meineke's economic loss argument at this juncture. *See USConnect, LLC*, 2017 WL 1450593, at *5–6 (denying motion to dismiss claim under economic loss rule because questions existed as to the "application of the contract to the alleged wrongdoing"). Accordingly, Meineke's motion to dismiss Count IV is denied.[8]

### D. Tortious Interference (Count V)

For their first counterclaim, the MFCC Defendants bring a claim for "tortious interference with contract/prospective contractual relations." (Countercl. at ¶¶ 82–85.) Though raised as a single claim, Count V includes two separate claims—one for tortious interference with contract and one for tortious interference with prospective economic advantage.[9] To state a

---

[8] Meineke suggests—albeit indirectly—that Count IV also fails because it is not accompanied by "an aggravating element, such as fraud, malice, reckless indifference, oppression, insult, and willfulness." (Pl. Br. at 16 (citation omitted).) But that requirement applies "before any punitive damages may be recovered." *Strum*, 15 F.3d at 331. Count IV does not seek punitive damages. (Countercl. at ¶ 81.) The Court also notes that while attempts "to turn a contract dispute into a tort action . . . [are] inconsistent both with North Carolina law and sound commercial practice," *Strum*, 15 F.3d at 329, it is "equally sound policy to assure that parties do not sacrifice other extra-contractual rights just because they have a contract." *Capital Factors, Inc.*, 209 F. Supp. 2d at 585.

[9] Courts "have used varying terminology in identifying tortious interference claims." *Tucker Auto-Mation of N. Carolina, LLC v. Russell Rutledge & Rutledge Commercial, LLC*, No. 15-cv-893, 2017 WL 2930926, at *2 n.2 (M.D.N.C. July 10, 2017). Because the North Carolina Supreme Court referred to the claims as tortious interference with contract and tortious interference with prospective economic advantage, the Court will reference the claims consistent

claim of tortious inference with contract, a claimant must allege: "(1) a valid contract between the [claimant] and a third person which confers upon the [claimant] a contractual right against a third person; (2) the [claimant's adversary] knows of the contract; (3) the [claimant's adversary] intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to [the claimant]." *Beverage Sys. of the Carolinas*, 784 S.E.2d at 462. "A tortious interference with prospective economic advantage claim has the same elements except that instead of an existing contract, there must be a contract that would have been entered into but for the defendant's conduct." *Tucker Auto-Mation of N. Carolina, LLC*, 2017 WL 2930926, at *2 (citation omitted).

The MFCC Defendants claim that Meineke "is unlawfully attempting to interfere with [MFCC's] contractual obligations and benefits between [MFCC] and, amongst others, its landlord at the 54 Haddonfield Road location; its internet and web service providers, as well as its retail customers who chose to have their car serviced at an independently owned shop, as opposed to a franchise location." (Countercl. at ¶ 83.) Meineke argues that the MFCC Defendants do not plausibly allege a lack of justification. (Pl. Br. at 22.) The Court need not reach this element, as the MFCC Defendants fail to plausibly allege the preceding elements nested within it. That is, the counterclaims do not allege that Meineke intentionally induced the 54 Haddonfield Road landlord to not perform a contract, or to have declined to enter a contract but for Meineke's potentially justified conduct. If anything, the lone allegation invoking any contract suggests the opposite: that on September 18, 2017, MFCC "entered into a lease agreement with the landlord at 54 Haddonfield Road." (Countercl. at ¶ 51.) Nor do the

---

with that decision. *See id.* (citing *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 784 S.E.2d 457, 462–63 (N.C. 2016)).

counterclaims allege such facts—or any facts at all—regarding MFCC's "web service providers" or "retail customers." Accordingly, Count V is dismissed, without prejudice.

### E. Unfair Competition (Count VI)

Finally, Meineke moves to dismiss Count VI, which the MFCC Defendants label a claim for "unfair competition" without identifying the law under which it arises. (Countcl. at ¶¶ 86–89.) As North Carolina permits claims for both common law and statutory unfair competition, *see generally Dowless v. Warren-Rupp Houdailles, Inc.*, 866 F.2d 1415 (4th Cir. 1989), the Court will not guess at which claim the MFCC Defendants intend to bring. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring claims to "raise a right to relief above the speculative level"). Count VI is dismissed, without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Meineke's motion to dismiss is **GRANTED** in part and **DENIED** in part. Counts II, III, V, and VI are dismissed, **WITHOUT PREJUDICE**, with leave to amend by October 26, 2018. Meineke's motion to dismiss Count IV is **DENIED**. An appropriate Order shall issue.

Dated: 9/26/18 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge